## Lindenberger v. Cornell, et al.

(Decided March 15, 1921.)

### Appeal from Jefferson Circuit Court (Chancery Branch, Second Division).

1. Life Estates—Liens.—A life tenant, who is required to remove an encumbrance secured by a lien from the estate to prevent its sale, has a lien upon the entire property for recoupment.

2. Life Estates—Repairs and Improvements.—It is the duty of the life tenant to make all ordinary, reasonable and necessary repairs upon the property of the estate, and can not charge the remaindermen, personally, nor their interests in the property, with any part of the cost.

3. Remainders—Sale of Interest.—A vested remainderman may sell his interest in the property, and pass a good title to the purchaser.

4. Remainders—Sale of Interest.—A vested remainder, which is subject to a defeasance may be sold and a good title conveyed by deed to a purchaser, but, it will be subject to be defeated, if the event which creates the defeasance occurs.

5. Remainders—Contingent Remainder—Sale of.—Any contingent remainder in real estate may be sold and conveyed, but, unless the dubious and uncertain event, upon which the vesting of the estate depends, occurs at the time, when according to the instrument creating the estate, it must occur, to cause the estate to vest, the purchaser will acquire nothing by his purchase.

BURNETT, BATSON & CARY for appellant.

NICHOLAS T. WHITE for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE HURT—
Reversing.

The appellant was the widow of one James Y. Currey, who died on the 4th day of December, 1916, but since has married the appellee, Harry B. Lindenberger. Her former husband, James Y. Currey, died testate, leaving a last will and testament which provided as follows:

"Article First. I direct the payment of all my just debts and funeral expenses as soon after my death as may be practicable.

"Article Second. I hereby give, devise and bequeath all the rest residue and remainder of my estate, both real and personal, wheresoever situated, whereof I am seized or possessed or to which I may be in any manner entitled or in which I may be interested at the time of my death, unto my beloved wife, Annie Cornell Currey, during her life, this provision being made for the benefit and in the interest of any child or children who may hereafter be born, believing it to be in their best interests for me thus to trust and to rely wholly upon my said wife to care for them and to provide properly for their support and maintenance.

"Aticle Third. I will and direct that so much of my residuary estate as shall remain upon the death of my said wife, Annie Cornell Currey, shall be divided into three equal parts; and, I hereby give, devise, and bequeath one of such parts to the heirs at law of my said wife, or to such person or persons as she may designate in case she elects to dispose of said one-third part by will; and I hereby give, devise and bequeath the remaining two of such equal parts unto my mother, Arthusa Ruth Currey, absolutely forever. But, if my said mother shall have died before the death of my said wife, then and in that event I give, devise and bequeath the said two equal parts unto my brothers and sisters then living, share and share alike."

The testator left surviving him his mother, Arthusa Ruth Currey, and the following brothers and sisters, viz.: Maggie Currey Robinson, Sallie Currey Hemphill, wife of J. C. Hemphill, Mamie C. Gaines, wife of Fisher Gaines, Carrie C. Anderson, wife of John L. Anderson, Theodore Currey, whose wife is Harriet F. Currey, and William Y. Currey, whose wife is Ella Moore Currey.

At the time of the death of James Y. Currey, the appellant, his widow, had the following relatives: Evaline D. Cornell, her mother, and James H. Cornell and Theodore P. Cornell, brothers, and Lizzie C. Fleming, a sister. The testator's only estate consists of a house and lot in the city of Louisville which he purchased several years previous to his death, at a cost of $4,350.00.

The testator, at the time of his death, was indebted to various persons in sums which aggregated $1,200.00, and these debts his widow discharged with her own money. The dwelling house which testator owned at his death, being in need of repairs, the widow expended $600.00 of her own money in making such repairs upon it as she deemed necessary. The testator's mother and his brothers and sisters, who were alive at the time of his death, joined in a deed of conveyance and attempted to convey to the widow in fee the two-thirds interest in the house and lot which under the will, subject to the life estate of the widow, was devised to the mother of testator, absolutely, if she should be living at the death of the widow, and if the mother was not then living to the brothers and sisters of testator who were then living.

The appellant, who was the widow, brought this action against the appellees, who are her mother, brothers and sisters, and who would be her heirs, if she should die at this time, claiming that she took an estate in the house and lot which was greater than a life estate, in other words she had a life estate with a power of disposition and had the power to sell and convey same, and that she was in need of the proceeds of the sale of same for her maintenance, and had been offered a fair price for it which she accepted, but the purchaser refused to accept a conveyance from her, or to consummate the contract, claiming that she could not convey a good title. She prayed for a construction of the will and a determination as to what estate she had in the property, as well as the other persons had, who are named in the will, and in the event it should not be decided that she had an estate coupled with the power which authorized her to sell and convey it, that she be adjudged a lien upon the property for the $1,200.00 she had paid in discharge of the testator's debts, and the $600.00 which she had expended in repairs upon the property, and that these liens be enforced and the property sold and any interest which she had therein be set apart to her.

The court adjudged, as follows:

1. The testator owned no property other than the house and lot at his death, and that it was indivisible.

2. The appellant was entitled to recover the sum of $1,200.00 against the estate of the testator, with interest since February 3, 1917, and, also, the $600.00 against the house and lot, both the life estate and the remainder interest.

3. By reason of the deed executed to appellant by the mother, brothers and sisters of testator, she became the owner of two-thirds of the property in fee, with power to sell and dispose of it upon such terms as she might choose, and appropriate the proceeds.

4. Under the will, appellant was the owner of a life estate in the other one-third of the property, with a power to dispose of it absolutely by will, and the appellees—her mother, brothers and sisters—were the owners of a vested remainder in it, and that they, as such vested remaindermen, had full power and right to convey the remainder and vest the purchaser with an absolute title thereto, subject to the life estate of the appellant and her power to dispose of it by will.

5. The appellant can not convey a title in fee simple to the one-third interest last mentioned, and that such title can only be conveyed by a joint conveyance of herself and appellees.

6. The appellant has a lien upon the said one-third part, devised to her for life, to secure the payment of one-third of the $1,200.00 and $600.00 above mentioned, and that such one-third interest be sold in satisfaction of same, and appellant was authorized to become a bidder at the sale.

7. If the undivided one-third interest should sell for a sum in excess of $600.00, the appellant has only a life estate in the excess, and a right to the income from it, but no right to encroach upon the principal of it which should be put in the hands of a trustee, and invested as other trust funds, and held subject to the conditions of the will as to such one-third part.

From the judgment the widow has appealed.

(a) Considering the first, second and sixth findings of the court, the testator having left no other property than the dwelling house and lot, his indebtedness was a lien upon it, and the appellant having a life estate in the property and discharging the encumbrances with her own money to prevent its sale, is entitled to be substi-

tuted to the lien which the creditors had upon the entire property, and the right to an enforcement of her lien, and a sale of a sufficiency of the property to satisfy the debt with its interest. Todd's Exor. v. First National Bank, 173 Ky. 60; Daviess v. Meyers, 13 B. M. 51. The lien is not upon the third part of the property only, but upon the whole of it, and for reasons hereinafter shown, the judgment should have been for the entire amount of the indebtedness and for a sale of the entire property in satisfaction of it, instead of for a third part of the indebtedness and for a sale of only a third part of the property. Being a dwelling house and a small lot upon which it stands, it was not divisible, and for that reason a judgment could not be rendered to sell a sufficiency of it to pay the debt, but the widow was properly authorized to become a bidder at the sale. The parties in interest under the will would have the same interest in the excess of the proceeds of the sale as they would have in the property if it had not been sold.

(b) The defendants in the action made no objection to the assertion of the claim of $600.00 expended upon the property for repairs nor to its assertion as a lien thereon, but in as much as the parties who under the will may eventually be the devisees of the remainder interests and entitled to the property, were not parties to the action and may not now be in existence, the court was not authorized to adjudge a claim to be a lien upon the property and a sale of it in part satisfaction of such a claim, when it could not, in any event, be a debt against the remaindermen, nor a lien upon their interest in the property. The record does not indicate the nature of the repairs, but it does show that at the death of the testator and when the life estate of the appellant came into existence, the testator and his family were then occupying the building, and that for such reason it was not untenantable, although it might be in need of ordinary repairs, and that the repairs made by appellant at the cost of $600.00 put it in good repair, and that it was now of the value of $3,200.00. There is no principle better settled in this jurisdiction than that it is the duty of a life tenant to maintain the property in repair so as to preserve it from destruction, and that it may be preserved for the remaindermen in substantially the condition in which it was received by the life tenant, and to that end it is the duty of the life tenant to make all the ordinary, reasonable and necessary repairs to

preserve the property, and neither for the cost of such repairs nor for improvements made upon the property by the life tenant can he charge the remaindermen personally nor can they be made a charge against the interest of the remaindermen in the property. Todd's Exor. v. First National Bank, *supra;* Lorman v. Lorman, 173 Ky. 477; Graves v. McDonnell, 144 Ky. 607; Frederick v. Frederick, 31 K. L. R. 583; Henry v. Brown, 99 Ky. 13; Wilson v. Hamilton, 140 Ky. 327; Mayes v. Payne, 22 K. L. R. 1465; Hackworth v. Louisville Artificial Stone Company, 106 Ky. 235; Delker v. Owensboro, 30 K. L. R. 440; Creutz v. Heil, 89 Ky. 432; Brodie v. Parsons, 23 K. L. R. 831; Prescott v. Grimes, 143 Ky. 191; Stovall v. Mayhew, 173 Ky. 212; Presbyterian Church v. Fithian, 29 S. W. 143; Neel v. Noland, 166 Ky. 469; Caldwell v. Jacob, 16 K. L. R. 21; Wilson v. Hamilton, 140 Ky. 329; Holmes v. Lane, 136 Ky. 21; Nall v. Miller, 95 Ky. 448; Gaulbaugh v. Rouse, 31 K. L. R. 583; Culton v. Kenney, 18 K. L. R. 1065; Sparks v. Ball, 91 Ky. 502; Johnson v. Stewart, 8 K. L. R. 857; Scott v. Scott, 183 Ky. 604. It may be insisted that the facts of the instant case differentiate it from those supporting the general rule, in that the property was in need of the repairs at the time the life estate was created and began, but the difference does not require a different conclusion from the general rule, when it is remembered that all of the precedents in this jurisdiction are to the effect, that although a life tenant may construct a new building of a permanent character and thus add materially to the value of the remainder, it will be presumed to have been done by the life tenant for his comfort and pleasure, and with the knowledge of his estate, and he can not apportion any part of the cost to the remaindermen or their interest in the property. In Clemence v. Steere, 53 Am. Dec. 621, it was said: "If the life tenant receives a house in such a state as not to be reparable, or so dilapidated that the expense of repairing would be beyond the value of the house, he is not bound to repair, and may leave it to its natural destruction, but if the house is such that repairs would make it tenantable, he is bound to make them." Without adhering to the soundness of the above rule in its entirety, but applying our own rule to such a state of facts, it would seem that a life tenant receiving a house which was in need of only ordinary repairs, it would be his duty to put it in repair, and, at the least, having done so, it would be pre-

sumed to have been done for his own comfort and convenience, and could not be made a charge upon the remaindermen personally, nor against their interest in the property, and hence the court was not authorized in adjudging that the $600.00 claim for repairs or any part of it was a lien upon any part of the property as between the life tenant and the remaindermen.

(c) The court by its seventh finding held that appellant received under the will. a simple life estate only, and was therefore entitled only to the use of the property, if preserved in kind, or if converted into money, the income therefrom during life, and this holding is challenged by the life tenant, the appellant. There is no contention and no ground for contending that the appellant takes as much as a fee simple estate under the will, but it is contended that she takes a life estate coupled with an unrestricted power of disposition. That, if she has a power of disposition at all, it is clear that it is not unrestricted, since, if testator did not expect that some portion of the devised property would remain unconsumed or undisposed of at the death of his wife, it would have been needless to have made a limitation over of any part of it, in remainder, as he did. The will does not contain any express power of disposition, but we are of the opinion that a limited power must be implied from a consideration of the entire will. The property, however, consisting of real estate alone, and the life estate not coupled with an express power of disposition by the life tenant, in the light of the recent opinion in Clore v. Clore, 184 Ky. 83, and the extension of the opinion in the same volume, page 89, whether there is a power of disposition by the act of the life tenant, ceases to be of importance, as in such cases, where the corpus of the estate may be encroached upon to provide a comfortable maintenance for the life tenant, it is held that application must be made to the chancellor to authorize a sale of such real property, who may determine the necessity and the extent of it. We think the appellant, as a life tenant, takes more than a simple life estate, though less than a fee, and that she is entitled to the entire income from the property, and if necessary, to provide for her a comfortable maintenance in addition to the income, the corpus of the estate may be encroached upon to the extent that it is reasonably necessary for that purpose. The language in the third clause of the will preceding the provisions for the limita-

tions over, in remainder, after the life estate, is clearly indicative of the intention of the testator, when he says, ''I will and direct that so much of my residuary estate as shall remain upon the death of my said wife, etc.,'' to limit over in remainder, such part of the estate only as may not be consumed or disposed of at that time, by the life tenant, and it further conclusively indicates that the testator expected that a portion of it at the least, might be disposed of or consumed at that time, though probably all of it would not be so consumed. It will be observed that the above quoted language follows immediately the clause by which the entire estate is given to the widow during her life, which with the accompanying language manifestly shows the intention of the testator to provide the wife with the means of a reasonably comfortable maintenance during life. There being no two wills alike, it is difficult to find any precedent to guide in the construction of any will, but general principles have to be relied upon and the constructions heretofore placed by the courts upon wills having similar language or similar import. Wills having similar language to the instant one have often been held to give to the life tenant, by implication, the power to dispose of the property, and to use more than the income for a necessary maintenance and support, especially where such intention on the part of the testator can be deduced from a consideration of the entire will. The following cases, though not sufficiently alike in language to the instant one, to constitute a precedent are illustrative of the principle invoked: McClelland v. McClelland, 132 Ky. 284; Anderson v. Hall, 80 Ky. 91; Angel v. Wood, 153 Ky. 201; Becker v. Roth, 132 Ky. 429; Hickman v. Moore, 160 Ky. 475; Clore v. Clore, 184 Ky. 83; Presbyterian Church v. Mize, 181 Ky. 567. Hence, when a sale of the property in the instant case is directed, the excess of the proceeds, after the satisfaction of the appellant's debt against it, should be put in the hands of a trustee, with directions to pay the entire income, less cost of trust, to the life tenant, and such further sum as may be reasonably necessary from time to time to provide for her a comfortable maintenance and to hold the residue of the fund subject to conditions provided in the third clause of the will, or else secure the interests of the remaindermen, by requiring the execution of bonds for that purpose by the life tenant, as may be done by courts of equity.

(d)  The limitation over after the life estate of appellant of two-thirds of the property to the mother, brothers and sisters of the testator, is expressed in the following language: "And I hereby give, devise and bequeath the remaining two of such equal parts unto my mother, Arthusa Ruth Currey, absolutely, forever. But, if my said mother shall have died before the death of my said wife, then and in that event, I give, devise and bequeath the said two equal parts unto my brothers and sisters then living, share and share alike." The estate devised to the mother of testator was a vested remainder, as she was capacitated, to enter into the possession of the property, in enjoyment, upon the happening of the event, upon which her estate depended which was the death of the life tenant, and which was an event certain to occur, but, her interest was subject to be defeated by her own death, before the termination of the life estate of the appellant, and in other words, she was vested with a defeasible fee, in remainder. The interests devised to the brothers and sisters of the testator were not vested remainders, but, executory devises, with all the essentials of contingent remainders. Their interests would never attach nor vest, in enjoyment, except certain events should occur, which were uncertain and would probably never occur, one of which was that the mother of testator should die before the termination of the life estate, and another was, that if the mother should die before the termination of the life estate, that they would be then alive. A vested remainder is a fixed interest to take effect in enjoyment after a particular estate is spent, and is an actual estate, which may be sold and the title passed to the purchaser, but, a contingent remainder is one limited so as to depend on some event or condition, which is uncertain and may never happen or be performed. Johnson v. Jacob, 11 Bush, 656; Bowling v. Dobyns, 5 Dana 441; Jackson v. Sublette, 10 B. M. 472; Williamson v. Maynard, 162 Ky. 726; Turner v. Johnson 160 Ky. 169; Leppes v. Lee, 92 Ky. 16; Walter v. Crutcher, 15 B. M. 10; Slote v. Reiss, 153 Ky. 30; Fulton v. Teager, 183 Ky. 381; Williamson v. Williamson, 18 B. M. 368; Moore's Admr. v. Sleet, 113 Ky. 600; Neil v. King, 104 S. W. 380. Under section 2341 Kentucky Statutes, a contingent remainder of any kind is the subject of a sale and conveyance, but, the purchaser will receive nothing, unless the contingent remainderman survives, until the event occurs upon which

his estate vests, or at the least, unless in certain instances where the designation of a remainderman is fixed and certain, and the only contingency is the happening of the event upon which his estate depends and such event occurs. Bank of Taylorsville v. Vandyke, 159 Ky. 201; Fulton v. Teager, 183 Ky. 381. Hence, if the mother of testator should outlive the appellant, the title to the remainder in the two-thirds of the property, which she conveyed to appellant by her deed would pass a good title, but, if the mother of testator should die before the termination of the life estate, the title made by her would fail. The deed executed to appellant by the brothers and sisters of testator, does not convey her any title, unless one or more of them should be living, at the termination of the life estate of appellant, and the mother of testator had died theretofore, or in other words, at the happening of the events, upon which their interests would vest, in enjoyment. If mother, brothers and sisters of the testator, should not be living at the death of appellant, the two-thirds interest in the property would pass to whoever, the heirs of testator might then be, as undevised estate. A conveyance of their contingent interests in the one-third of the property, which was devised to the heirs of appellant, by her mother, brothers and sisters, does not convey any title to her, unless the mother, brothers and sisters, or one or more of them should be the only heirs of appellant at her death. The third clause of the will was made by testator, evidently, in contemplation, that, he would die childless, and the heirs of appellant to whom the devise was there made, could not be construed to be her children, and a living person can not have heirs. When property is devised to one for life with remainder to the heirs of the life tenant the heirs take a contingent remainder, Jones v. Thomasson, 159 Ky. 196; Williamson v. Maynard, 162 Ky. 726; Williamson v. Williamson, 18 B. M. 329. The persons who would be the heirs of appellant, if she should now die, will in all reasonable probability not be her heirs, when she does die and will have no interest in the property, because the event has never occurred, which would cause their contingent remainders to vest. Hence, the court was in error, in adjudging that the conveyance by the mother, brothers and sisters of testator vested a fee simple title in appellant to the two parts of the property, attempted to be conveyed by them, and that a conveyance by the mother, brothers and

sisters of appellant to her of the other part of the property would convey her a good title.

The judgment is therefore reversed, and cause remanded for proceedings not inconsistent with this opinion.